# Illinois Official Reports

## Appellate Court

---

**People v. One 2014 GMC Sierra, 2018 IL App (3d) 170029**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ONE 2014 GMC SIERRA, Defendant (Michael Sheland, Claimant-Appellant). |
| District & No. | Third District<br>Docket No. 3-17-0029 |
| Filed | February 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 16-MR-190; the Hon. Katherine Gorman Hubler, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kevin F. Sullivan, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, Lawrence M. Bauer, and Dawn Duffy, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices O'Brien and Schmidt concurred in the judgment and opinion. |

**OPINION**

¶ 1　　Three months after a vehicle titled in his name was forfeited under the Illinois drug laws, claimant, Michael Sheland, filed a petition for relief from judgment, seeking the return of the vehicle. Following a hearing, the trial court denied the petition. Sheland appeals, arguing that the trial court erred in finding that (1) the vehicle had been used to facilitate the receipt or possession of heroin and was subject to forfeiture under the drug laws, (2) Sheland was not an innocent owner of the vehicle and was not protected from forfeiture under the innocent-owner exemption, and (3) the forfeiture of the vehicle under the facts of the present case did not constitute an excessive fine under the eighth amendment. We affirm the trial court's judgment.

¶ 2　　　　　　　　　　　　　　　　　　　FACTS

¶ 3　　On February 29, 2016, John Folder and Wendell Stephens were found unconscious in the front seat of a 2014 GMC Sierra truck at the intersection of Griswold Street and Lincoln Avenue in Peoria, Illinois. The engine of the vehicle was running, and the vehicle was in gear. Folder was in the driver's seat, and Stephens was in the passenger seat. Syringes and traces of heroin were found in the vehicle. The title to the vehicle was in the name of the claimant, Michael Sheland.

¶ 4　　Folder and Stephens were transported to the hospital. At the hospital, Folder was questioned by police. Folder told police that he and Stephens had been at a bar in Pekin, Illinois, when they decided to go to a location in Peoria to get some heroin. After obtaining the heroin, Folder and Stephens used the heroin inside the vehicle. Folder provided a urine sample at the hospital, which showed the presence of a heroin metabolite in his system. Folder was later arrested for driving under the influence of drugs (DUI). He was not charged with possession of a controlled substance.

¶ 5　　In May 2016, the State filed a complaint for forfeiture of the vehicle pursuant to section 505(a)(3) of the Illinois Controlled Substances Act (Substances Act) (720 ILCS 570/505(a)(3) (West 2016)) and section 9 of the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/9 (West 2016)). In the complaint, the State alleged that the vehicle was used or was intended to be used to facilitate the receipt or possession of heroin in violation of the Substances Act.

¶ 6　　Sheland filed a verified claim in the trial court, stating that he was the owner of the vehicle, disputing the State's attempt to obtain a forfeiture judgment, and seeking the return of the vehicle. Sheland later filed a verified answer and affirmative defense (collectively referred to as the answer) to the complaint. In the answer, Sheland asserted that the vehicle was not subject to forfeiture because it had not been used to facilitate the possession or consumption of heroin and that he was exempt from forfeiture because he was an innocent owner of the vehicle. As required by statute (*id.* § 6(C)(2)), bail in the amount of $2000 cash was posted. The bail money was posted by Folder.

¶ 7　　In August 2016, a bench trial was held on the complaint for forfeiture. At the beginning of the trial, the parties submitted a written stipulation, which stated as follows:

> "On February 29, 2016, John Folder drove the vehicle at issue, the 2014 GMC VIN# 3GTU2VEC7EG363426, to the Menard's in Pekin, Illinois to pick up fencing materials. He purchased the materials and they were placed in the bed of the truck.

Later in the day, Folder and Wendell Stephens drove to a bar in Pekin, Illinois. After leaving the bar, Folder drove them in the 2014 GMC to a location in south Peoria, Illinois with the purpose of purchasing heroin. Stephens purchased heroin, and the two used the heroin while they were inside the 2014 GMC.

Around 5:15pm on February 29, 2016 Peoria Police Officer Roger Martin responded to the intersection of S. Griswold St. and W. Lincoln Ave. in Peoria, Illinois on the report of a male slumped behind the wheel. Officer Martin found the 2014 GMC in the intersection with Folder unconscious in the driver's seat and Stephens unconscious in the passenger seat."

¶ 8 After the stipulation was admitted, the State rested its case-in-chief. Sheland moved for a directed finding, and the trial court reserved its ruling on that issue. The bench trial went forward and Sheland presented his case-in-chief.

¶ 9 John Folder testified that he lived in Havana, Illinois, and that Sheland lived with him. Sheland was the son of Folder's ex-girlfriend. According to Folder, Sheland was the owner of the subject vehicle (also referred to as the truck). On the day in question, Folder used Sheland's truck so that he could pick up some fencing materials at Menards. Folder drove the truck from Havana to the Menards store in Pekin, Illinois. Wendell Stephens went with him. Folder did not plan to use heroin that day and did not tell Sheland that he was going to use the truck to violate any law. After arriving at the store, Folder purchased the fencing materials, and the materials were loaded into the back of the truck.

¶ 10 After Folder and Stephens left Menards, they went to a tavern in Manito, Illinois, and had lunch. From there, they traveled to Peoria at Stephens's request. Folder did not know why Stephens wanted to go to Peoria. In Peoria, Folder and Stephens stopped at a person's house, and Stephens went inside. Folder did not know that Stephens was going to buy heroin inside the house. Folder did not remember anything after that point and testified that he had never used heroin before. Folder acknowledged, however, that he used heroin later that day (the incident at issue) and that he was arrested for DUI but stated that he did not remember doing any of those things.

¶ 11 On cross-examination, Folder denied telling Peoria police officer Scott Hulse that he and Stephens had discussed going to Peoria so that they could get something to get a "buzz." Folder admitted that he had used the truck on prior occasions and stated that he had purchased the truck for Sheland for all of the work Sheland had done for Folder and for Sheland to transport Folder from time to time. Folder paid approximately $15,000 in cash for the vehicle. The title for the vehicle was in Sheland's name. Folder paid for the insurance on the vehicle, and Sheland would pay him back by working off the money. According to Folder, due to his own physical condition and the medications he was taking (or had been taking), he did not drive frequently. Folder also denied that he had told Peoria police officer Troy Skaggs that he had put the vehicle in Sheland's name due to a tax problem and because of a pending lawsuit.[1]

¶ 12 Twenty-eight-year-old Michael Sheland testified that Folder had previously dated Sheland's mother, that Sheland had known Folder for six or seven years, and that Sheland currently lived with Folder. On the date in question, Folder asked Sheland if he could use Sheland's truck (the subject vehicle) so that he could pick up some fencing materials at the Menards store in either Pekin or Peoria. Sheland and Folder each had a set of keys to the

---

[1]Skaggs's first name was listed later in the record as "Lance."

vehicle, and the vehicle was normally parked in Folder's garage when the vehicle was not in use. The vehicle had always been titled in Sheland's name. Sheland did not allow Folder to use the vehicle to get heroin and did not suspect that Folder would do so. Sheland did not believe that Folder had ever used heroin in the past or that Folder had ever misused prescription drugs and had never seen Folder consume much alcohol. The truck was Sheland's only vehicle. Sheland would clean the vehicle, and Folder would pay for service and repairs on the vehicle. Sheland used the vehicle to transport Folder and to seek employment for himself. Folder would always ask Sheland for permission to use the vehicle, although Sheland did not feel that Folder needed to do so. Sheland had never told Folder that he could not use the vehicle.

¶ 13    Peoria police officer Corey Miller testified that on the date in question, he responded to a call of two individuals passed out in a vehicle at the intersection of Lincoln Avenue and Griswold Street in Peoria. By the time Miller arrived at that location, both of the individuals, one of whom was Folder, had already been transported to the hospital. Miller went to the hospital to speak to Folder. At the hospital, Miller found Folder to be alert and talking and believed that Folder was in a right state of mind. Folder told Miller that he had come to Peoria to get high and referred to the vehicle as being "his." When Miller asked Folder why the vehicle was in Sheland's name, Folder stated that he was the owner of the vehicle but that he had put the vehicle in his son's (Sheland's) name due to some litigation or trouble that Folder was having with the Internal Revenue Service.

¶ 14    Peoria police asset forfeiture officer Lance Skaggs testified that Folder contacted him several times after the vehicle was impounded and tried to get the vehicle released. Folder told Skaggs that the vehicle was his vehicle and that he had put the vehicle in his stepson's name because he was trying to avoid some type of tax obligation.

¶ 15    After the evidence portion of the forfeiture hearing had concluded, the parties made their closing arguments. The State argued that Folder's conduct with the vehicle gave rise to its forfeiture, that Folder was the true owner of the vehicle, that Sheland merely held "bare legal title" to the vehicle, and that the innocent-owner exemption did not apply to Sheland because he was not the true owner. Sheland argued that he was the true owner of the vehicle; that the vehicle was not used to provide any additional degree of secrecy or facilitation in the possession and consumption of the heroin; that Sheland had no knowledge of, and did not acquiesce in, the possession or consumption of the heroin; and that Sheland was exempt from forfeiture under the innocent-owner exemption. Sheland also argued that the forfeiture of the vehicle would constitute an excessive punishment under the eighth amendment.

¶ 16    Following the conclusion of closing arguments, the trial court took the case under advisement. Later that same day or shortly thereafter, the trial court issued a written ruling (forfeiture order), denying Sheland's motion for a directed verdict and granting the State's complaint for forfeiture. In the forfeiture order, the trial court found that (1) the vehicle was used to facilitate the receipt or possession of the heroin in that the vehicle was used to obtain the heroin and gave privacy for the consumption of the heroin; (2) Folder had purchased the vehicle using cash and had paid for the insurance on the vehicle; (3) the vehicle was titled in Sheland's name; (4) Folder had a difficult time recollecting what he had told the police officers on the date of the heroin ingestion; (5) the two police officers both testified that Folder had put the vehicle in Sheland's name due to tax issues and a pending lawsuit; (6) neither Folder nor Sheland provided a credible explanation for why the vehicle was titled in Sheland's name; (7) although Sheland testified that he had no reason to believe Folder would use the truck for

criminal misdeeds, the trial court was completely skeptical of Sheland's testimony; and (8) the combination of the lack of recollection and the lack of candor led the trial court to conclude that the forfeiture did not meet any of the exemptions by a preponderance of the evidence. The trial court, therefore, ordered the vehicle forfeited and terminated Sheland's and Folder's interest in the vehicle.

¶ 17    About three months later, in November 2016, Sheland filed a petition for relief from judgment (735 ILCS 5/2-1401 (West 2016)) seeking the return of the vehicle. In the petition, Sheland alleged, among other things, that (1) he was the record title owner of the vehicle; (2) Folder was the person who had driven the vehicle during the time that the vehicle was allegedly used in the commission of a crime (the possession and use of heroin); (3) Sheland had no knowledge or reason to believe that Folder would use the vehicle to acquire and use heroin, did not consent to that conduct, and was not present when that conduct occurred; (4) Sheland was filing the petition for relief from judgment due to new and clarifying case law (*People ex rel. Hartrich v. 2010 Harley-Davidson*, 2016 IL App (5th) 150035, *rev'd*, 2018 IL 121636), which was issued after the trial court's decision in this case; (5) according to most vehicle appraisal agencies, the value of the subject vehicle at the time of its confiscation was approximately $40,000 (and referring the court to two exhibits attached to the petition); (6) the facts and circumstances of this case were far less egregious than those in *2010 Harley-Davidson*; and (7) given the value of the vehicle, which was titled in Sheland's name, and that the vehicle was Sheland's only mode of transportation, the forfeiture of the vehicle, when compared to the aberrant conduct of Folder on the date in question, violated the excessive fine clause of the eighth amendment. Attached to the petition as exhibits were two printouts from what was purported to be websites from two car appraisal services stating that the value of the vehicle was approximately $40,000.

¶ 18    In December 2016, a hearing was held on Sheland's petition for relief from judgment. No evidence was presented at the hearing, only arguments. While presenting his oral argument, Sheland's attorney commented that he knew the trial court had found "that the ownership [of the vehicle] was very, very close between Michael Sheland and John Folder" but asked the trial court to vacate its prior ruling based upon the excessive fine (eighth amendment) argument. The State in its oral argument indicated that, at the initial hearing, it had only contested whether Sheland was the owner of the vehicle for purposes of the innocent-owner exemption and that it did not present any evidence that Sheland was complicit with Folder's actions on the date of the incident. The State commented that inherent in the trial court's prior ruling was the court's finding that Folder was the owner of the vehicle and that Sheland was not the owner.

¶ 19    After listening to the parties' arguments, the trial court took the case under advisement. As it did so, the trial judge commented to Sheland's attorney that she felt that her previous order was "pretty clear" that there were some "real" credibility issues with Sheland, the way the truck was titled, and the things of which both Sheland and Folder were aware. The trial court issued a written ruling later that same day, denying Sheland's petition for relief from judgment. Sheland brought this appeal to challenge the trial court's ruling.

¶ 20                                    ANALYSIS

¶ 21    On appeal, Sheland argues that the trial court erred in denying his petition for relief from judgment. In support of that argument, Sheland claims that the trial court's erroneous ruling was based upon three incorrect findings that the trial court made: (1) that the vehicle had been

used to facilitate the receipt or possession of heroin and was subject to forfeiture, (2) that Sheland was not an innocent owner of the vehicle and was not protected from forfeiture under the innocent-owner exemption, and (3) that the forfeiture of the vehicle did not constitute an excessive fine under the eighth amendment. Based upon those incorrect findings, Sheland asks that we grant his section 2-1401 petition, that we vacate the forfeiture judgment, and that we restore his ownership and possessory rights to the vehicle.

¶ 22 The State argues that the trial court's denial of Sheland's section 2-1401 petition was proper and should be upheld. In response to Sheland's claims, the State asserts that (1) the trial court's findings in the underlying forfeiture proceeding (that the State had met its burden of proof for forfeiture of the vehicle and that Sheland had failed to establish that an exemption to forfeiture applied) were not against the manifest weight of the evidence and (2) based upon the facts of this case, the forfeiture of the vehicle was not an excessive fine under the eighth amendment. For those reasons, the State asks that we affirm the trial court's judgment.

¶ 23                                    I. Standard of Review

¶ 24 To be entitled to relief on a fact-dependent section 2-1401 petition for relief from judgment, such as the one filed in the present case, the petitioner must set forth specific factual allegations in support of each of the following elements: (1) the existence of a meritorious defense, (2) due diligence in presenting that defense to the trial court in the original underlying action, and (3) due diligence in filing the section 2-1401 petition. 735 ILCS 5/2-1401 (West 2016); *Warren County Soil & Conservation District v. Walters*, 2015 IL 117783, ¶ 51. In resolving a fact-dependent section 2-1401 petition, the trial court must consider the particular facts, circumstances, and equities of the underlying case. *Id.* ¶ 50. A trial court's ruling on a fact-dependent section 2-1401 petition will not be reversed on appeal absent an abuse of discretion. *Id.* ¶ 51. The threshold for finding an abuse of discretion is high and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 25            II. Sheland's Claim That the Vehicle Was Not Subject to Forfeiture

¶ 26 As noted above, in support of his argument that the trial court erred in denying his section 2-1401 petition, Sheland claims first that the trial court's erroneous ruling was based upon the trial court's incorrect finding that the vehicle had been used to facilitate the receipt or possession of heroin and that it was subject to forfeiture under the Substances Act. Sheland asserts that the trial court's finding in that regard was incorrect because the evidence presented at the forfeiture hearing showed that (1) Folder did not purchase or possess the heroin, although he may have used the heroin, (2) the vehicle did not provide any additional level of privacy to Folder in the use of the heroin, (3) Folder did not use the vehicle to transport the heroin from one location to another, (4) there was no proof that Folder used the heroin while in the vehicle, and (5) Folder was not charged with any offense under the Substances Act.

¶ 27 The State disagrees with Sheland's claim and contends that the trial court's finding—that the vehicle had been used to facilitate the receipt or possession of heroin—was not against the manifest weight of the evidence. In support of that contention, the State maintains that the evidence presented at the forfeiture hearing, and stipulated to by Sheland, showed that Folder

drove the vehicle from Pekin to Peoria so that he and Stephens could buy heroin, that Folder and Stephens were found passed out in the vehicle with the engine running, and that syringes were found inside the vehicle. Thus, the State contends that the trial court correctly found that the vehicle was subject to forfeiture under the Substances Act.

¶ 28    A forfeiture action is a civil *in rem* proceeding that is brought against items that were used in the commission of a crime. *People v. Strong*, 151 Ill. App. 3d 28, 34 (1986). Section 505(a) of the Substances Act provides for the seizure and forfeiture of any vehicle "used, or intended for use, to transport, or in any manner to facilitate" the transportation, sale, receipt, possession, or concealment of a controlled substance. 720 ILCS 570/505(a)(3) (West 2016). The key term in the portion of the statute set forth is "facilitate," which means to make it easier or less difficult. *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 84 (1994). The purpose of the forfeiture provisions of the Substances Act (and of the Forfeiture Act) is to deter individuals from trafficking in controlled substances by imposing a civil penalty in addition to the criminal penalties already provided in the statute. *People ex rel. Kelly v. Sixteen Thousand Five Hundred Dollars ($16,500) United States Currency*, 2014 IL App (5th) 130075, ¶ 18.

¶ 29    The procedure for seizing and forfeiting property pursuant to the Substances Act is set forth in the Forfeiture Act. In a proceeding under the Forfeiture Act, the State has the initial burden to show that probable cause exists for forfeiture of the property. 725 ILCS 150/9(G) (West 2016); *People v. Parcel of Property Commonly Known as 1945 North 31st Street, Decatur, Macon County, Illinois*, 217 Ill. 2d 481, 498 (2005). If the State satisfies its burden of establishing probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property is not subject to forfeiture or that one of the exemptions applies. See 725 ILCS 150/9(G) (West 2016); *1945 North 31st Street*, 217 Ill. 2d at 498. If the claimant fails to do so, the trial court shall grant the complaint for forfeiture and order the property forfeited to the State. 725 ILCS 150/9(H) (West 2016); *1945 North 31st Street*, 217 Ill. 2d at 498.

¶ 30    In the present case, before we address the merits of the parties' arguments on this issue, we must first address a procedural problem that we have found with the parties' arguments. By and large, the parties, especially Sheland, ignore the fact that the ruling before this court on appeal is the trial court's denial of Sheland's petition for relief from judgment. Instead, the parties make their arguments and their assertions in support of those arguments as if this appeal was a direct appeal from the trial court's underlying forfeiture decision. As a result, many of the parties' arguments and assertions in this appeal seem misplaced.

¶ 31    Sheland, as the claimant in this case, filed a fact-dependent petition for relief from judgment. See *Warren County*, 2015 IL 117783, ¶ 51. The purpose of that petition, as with all fact-dependent petitions, was to bring to the trial court's attention facts not known to the petitioner or the court at the time of the judgment that would have resulted in the judgment not being entered. See *Mortimer v. River Oaks Toyota, Inc.*, 278 Ill. App. 3d 597, 605 (1996). A section 2-1401 petitioner brings those facts to the trial court's attention in a fact-dependent petition seeking to get the trial court to vacate its previous ruling and to open the matter up for further litigation. See *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 107 (2006). However, a fact-dependent section 2-1401 petition is not a substitute for a motion to reconsider (or other postjudgment motion) or for a direct appeal (*Brunswick v. Mandel*, 59 Ill. 2d 502, 504-05 (1974); *Mortimer*, 278 Ill. App. 3d at 605) and does not resolve the merits of the underlying dispute (*Paul*, 223 Ill. 2d at 107). Rather, if the trial court grants a fact-dependent

section 2-1401 petition, the previous ruling is merely vacated and the underlying case is opened back up for further litigation on the merits. See *id.* at 106-08.

¶ 32 In the underlying forfeiture proceedings in the present case, Sheland made the exact same arguments regarding whether the vehicle was subject to forfeiture and whether the innocent-owner exemption applied and based those arguments upon the exact same facts. Thus, Sheland's claims as to whether the vehicle was subject to forfeiture and whether the innocent-owner exemption applied were not appropriate claims for relief that Sheland could raise in a section 2-1401 petition. See *id.*; *Brunswick*, 59 Ill. 2d at 504-05; *Mortimer*, 278 Ill. App. 3d at 605. To the contrary, when Sheland's claims in that regard were rejected by the trial court in the forfeiture proceeding, he had two choices—to file a motion to reconsider (or some other postjudgment motion) or to file a direct appeal. See *Lilly v. Cook County*, 60 Ill. App. 3d 573, 577 (1978). Sheland could not, however, use the instant section 2-1401 petition to relitigate those claims, since they were fully litigated by valid means in the trial court in the previous forfeiture proceeding.[2] See *Paul*, 223 Ill. 2d at 106-08; *Brunswick*, 59 Ill. 2d at 504-05; *Mortimer*, 278 Ill. App. 3d at 605; *Lilly*, 60 Ill. App. 3d at 577. Therefore, on that basis, we reject Sheland's first claim on appeal—that the vehicle was not subject to forfeiture—and find that the trial court properly denied that claim in Sheland's petition for relief from judgment. In doing so, we note that although the State did not challenge the propriety of this particular claim in the trial court proceedings on the section 2-1401 petition or in this appeal, we are free to affirm the trial court's judgment on any basis supported by the record. See *Schultz v. Schultz*, 297 Ill. App. 3d 102, 106 (1998).

¶ 33 Even if we assume, however, for the sake of argument, that Sheland's claim that the vehicle was not subject to forfeiture under the Substances Act was a proper basis for section 2-1401 relief in this case, we still must reject Sheland's claim on appeal because the trial court's underlying factual finding—that the vehicle had been used to facilitate the receipt or possession of heroin—was well supported by the evidence. See *Strong*, 151 Ill. App. 3d at 34 (the factual findings underlying a trial court's forfeiture ruling will not be reversed on appeal unless they are against the manifest weight of the evidence). Contrary to Sheland's assertions on appeal, the evidence presented at the forfeiture hearing established that Folder and Stephens took the vehicle to Peoria to purchase heroin, that they used heroin inside the vehicle, and that they later passed out in the vehicle at an intersection in Peoria with the engine running. Syringes and traces of heroin were found inside the vehicle, and a heroin metabolite was found in Folder's system. Because the vehicle was used to facilitate (make easier) the receipt or possession of heroin, it was subject to forfeiture under the Substances Act, unless an exemption applied. See 720 ILCS 570/505(a)(3) (West 2016); *Waller*, 162 Ill. 2d at 86 (the trial court's finding that vehicle was used to facilitate the transportation of cocaine was not against the manifest weight of the evidence). The fact that Folder was not charged with an offense under the Substances Act does not lead us to reach a different conclusion, as such a charge was not required for a valid forfeiture to occur. See 725 ILCS 150/9(J) (West 2016) (stating that an acquittal or dismissal in a criminal proceeding shall not preclude civil

___

[2]There is no indication from the arguments made that Sheland's section 2-1401 petition was in the nature of a bill of review, wherein a section 2-1401 petitioner claims that the trial court's ruling was legally inconsistent with the undisputed facts or in the nature of a challenge to a allegedly void judgment. See *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶¶ 13-22 (discussing the three main types of section 2-1401 petitions that are recognized under the law).

proceedings under the Forfeiture Act); *People v. 1995 Ford Van*, 348 Ill. App. 3d 303, 309 (2004) (noting under a similar forfeiture statute that it is well settled that a conviction is not a prerequisite to a forfeiture proceeding).

¶ 34                     III. Sheland's Assertion That He Was Exempt
                        From Forfeiture Under the Innocent-Owner Exemption

¶ 35    As his second assertion in support of his argument that the trial court erred in denying his section 2-1401 petition, Sheland asserts that the trial court's ruling was erroneous because it was based on the trial court's incorrect finding that Sheland was not an innocent owner of the vehicle and was not exempt from forfeiture under the innocent-owner exemption. Sheland claims that the trial court's finding in that regard was incorrect because the evidence presented at the forfeiture hearing showed that Sheland was the title owner of the vehicle, that Sheland had loaned the vehicle to Folder on that particular day so that Folder could obtain fencing materials, that Sheland did not participate in or promote the commission of the illegal conduct, and that Sheland could not have known or anticipated that Folder would use the vehicle to enable Stephens to obtain heroin or that Folder would use heroin while operating the vehicle.

¶ 36    The State disagrees with Sheland's assertion and contends that the trial court's finding—that Sheland had failed to establish that he was an innocent owner of the vehicle—was not against the manifest weight of the evidence. Focusing on the ownership aspect of the exemption, the State maintains that the evidence presented at the forfeiture hearing in this case rebuts Sheland's claim that he was the owner of the vehicle since the evidence showed that Folder had purchased the vehicle, that Folder kept the vehicle at his house, that Folder had keys to the vehicle, that Folder paid for services on the vehicle, that Folder referred to the vehicle as being "his," and that Folder had told police that he had put the vehicle into Sheland's name to avoid certain financial and tax consequences.

¶ 37    As noted above, one of the ways that a claimant may satisfy his or her burden in a forfeiture proceeding under the Substances Act and the Forfeiture Act is by establishing that he or she is an innocent owner of the property. See 720 ILCS 570/505(a)(3)(ii) (West 2016); 725 ILCS 150/8 (West 2016); *1945 North 31st Street*, 217 Ill. 2d at 498. An innocent owner is exempt from forfeiture under both the Substances Act and the Forfeiture Act if he or she can prove that the act in question was committed without his or her knowledge or consent. See 720 ILCS 570/505(a)(3)(ii) (West 2016); 725 ILCS 150/8 (West 2016); *1945 North 31st Street*, 217 Ill. 2d at 498; *People ex rel. Birkett v. 1998 Chevrolet Corvette*, 331 Ill. App. 3d 453, 463 (2002). Inherent in the innocent-owner exemption is a requirement that the claimant be an owner of the vehicle. See 720 ILCS 570/505(a)(3)(ii) (West 2016); 725 ILCS 150/8 (West 2016); *1945 North 31st Street*, 217 Ill. 2d at 497 (stating that only an owner or interest holder may file an answer asserting a claim against the property); *1998 Chevrolet Corvette*, 331 Ill. App. 3d at 462-63 (discussing whether a father, who held title to the subject vehicle, or daughter, who purchased the vehicle and maintained dominion and control over the vehicle, was the true owner of the vehicle for the purposes of the innocent-owner exemption); *People ex rel. Carey v. 1976 Chevrolet Van*, 72 Ill. App. 3d 758, 759-61 (1979) (discussing whether a father, who had provided the money for the purchase of the subject vehicle, or his son, who had sold heroin out of the subject vehicle and in whose name the subject vehicle was registered, was the true owner of the vehicle for the purposes of the innocent-owner exemption). In determining whether a person is an owner of a vehicle for the innocent-owner exemption, the trial court

- 9 -

must look at all of the facts and circumstances involved. See *People v. Dugan*, 109 Ill. 2d 8, 18-19 (1985). The fact that the title to the vehicle is in a person's name, in and of itself, is not dispositive on that issue. See *id.* The determination must be made on a case-by-case basis considering the unique facts before the trial court in each particular case. See *People v. 1991 Chevrolet Camaro*, 251 Ill. App. 3d 382, 389 (1993) (discussing ownership interests in a subject property under a similar forfeiture statute).

¶ 38        In the present case, before we address the merits of this issue, we must again point out—as we did with Sheland's first claim on appeal—that Sheland's second claim on appeal (the innocent-owner exemption) is also not an appropriate claim to be raised in a fact-dependent section 2-1401 petition. See *Paul*, 223 Ill. 2d at 106-08; *Brunswick*, 59 Ill. 2d at 504-05; *Mortimer*, 278 Ill. App. 3d at 605; *Lilly*, 60 Ill. App. 3d at 577. In making his innocent-owner-exemption claim, Sheland alleged no new or unknown facts, made no new arguments, and merely sought to relitigate the previous ruling that the trial court made on this issue in the underlying forfeiture proceedings.[3] Therefore, on that basis, we reject Sheland's second claim on appeal—that he was exempt from forfeiture under the innocent-owner exemption—and find that the trial court properly denied that claim in Sheland's petition for relief from judgment. In doing so, we again note that although the State did not challenge the propriety of this particular claim in the trial court proceedings on the section 2-1401 petition or in this appeal, we are free to affirm the trial court's judgment on any basis supported by the record. See *Schultz*, 297 Ill. App. 3d at 106.

¶ 39        However, even if we assume, for argument's sake, that Sheland's claim that he was exempt from forfeiture under the innocent-owner exemption was a proper basis for section 2-1401 relief in this case, we still must reject that claim on appeal because the trial court's underlying factual finding—that Sheland did not qualify for the innocent-owner exemption—was well supported by the evidence. See *Strong*, 151 Ill. App. 3d at 34 (the factual findings underlying a trial court's forfeiture ruling will not be reversed on appeal unless they are against the manifest weight of the evidence). Sheland's claim in that regard was based solely upon his own testimony and the testimony of Folder; both of whom the trial court found not credible. Sheland has not challenged that credibility determination on appeal. In addition, the evidence was conflicting as to whether Sheland actually owned the vehicle or was merely a bare titleholder of the vehicle, and it was the trial court's duty to resolve that inconsistency. See *1998 Chevrolet Corvette*, 331 Ill. App. 3d at 459 (stating that the trial court is in the best position in a forfeiture proceeding to evaluate the testimony of the witnesses and to draw inferences from the evidence). Despite any suggestion to the contrary, the fact that the title to the vehicle was in Sheland's name—and not Folder's—was not dispositive in determining whether Sheland or Folder was the owner of the vehicle for the purposes of the innocent-owner exemption. See *Dugan*, 109 Ill. 2d at 18-19. The trial court, therefore, did not err in finding that Sheland had failed to establish that he was an innocent owner of the vehicle. See *id.*; *1998 Chevrolet Corvette*, 331 Ill. App. 3d at 461-63; *1976 Chevrolet Van*, 72 Ill. App. 3d at 759-61.

---

[3]Again, there is no indication from the arguments made that Sheland's section 2-1401 petition was in the nature of a bill of review or a challenge to an allegedly void judgment. See *Pajor*, 2012 IL App (2d) 110899, ¶¶ 13-22.

¶ 40                              IV. Sheland's Claim That the Forfeiture of the Vehicle
                              Constituted an Excessive Fine Under the Eighth Amendment

¶ 41        As his third and final claim in support of his argument that the trial court erred in denying his section 2-1401 petition, Sheland asserts that the trial court's ruling was erroneous because it was based upon the trial court's incorrect finding that the forfeiture did not violate the excessive fine clause of the eighth amendment. Sheland contends that the forfeiture was an unduly harsh penalty in light of the facts that Sheland was not involved in the offense and had no knowledge of the offense, Folder was only charged with a Class A misdemeanor DUI, the offense took place over a short span of space and time, the value of the vehicle was about $40,000, and the vehicle was Sheland's only form of transportation.

¶ 42        The State argues that the offenses involved in this case were grave offenses, which endangered the public, and that the forfeiture of the $15,000 vehicle, because of the vehicle's significant connection to those offenses, was not an overly harsh or excessive penalty for purposes of the eighth amendment.

¶ 43        It is well-settled that a punitive forfeiture of property violates the excessive fine clause of the eighth amendment if it is grossly disproportional to the gravity of the offense for which it is forfeited. See *People v. One 2000 GMC*, 357 Ill. App. 3d 873, 875 (2005). In determining whether a forfeiture constitutes an excessive fine under the eighth amendment, courts consider the following factors: (1) the inherent gravity of the offense compared with the harshness of the penalty, (2) whether the property was an integral part of the commission of the crime, and (3) whether the criminal activity involving the property was extensive in terms of time and/or spatial use. *Id.* at 875-76. Those three factors, however, are not exclusive. *Id.* at 876.

¶ 44        In the present case, as noted in the recitation of the facts, Sheland alleged in his section 2-1401 petition that he was bringing the matter before the trial court because of a new Illinois Appellate Court decision on the eighth amendment issue (*2010 Harley-Davidson*, 2016 IL App (5th) 150035), which Sheland believed was factually similar to the present case. Unlike his first two claims in support of his argument on appeal, this third claim was arguably an appropriate basis upon which to file a section 2-1401 petition. See *Mortimer*, 278 Ill. App. 3d at 605. Sheland essentially claims that if the appellate court's decision in *2010 Harley-Davidson*, 2016 IL App (5th) 150035, had been released prior to the trial court's decision in this case, the trial court would not have entered the forfeiture judgment.

¶ 45        However, even if we assumed for the purpose of this issue that Sheland had established that he was the owner of the vehicle, when we consider the above factors in light of the factual circumstances involved, we must conclude that the factors weigh in favor of finding that the penalty in this case was not excessive. Despite Sheland's claim to the contrary, it appears from the record before us that the value of the vehicle was $15,000 (what Folder paid for the vehicle), rather than the $40,000 alleged by Sheland. Although Sheland had attached documents to his petition for relief from judgment purporting to show a higher value for the vehicle, no affidavits were attached to the petition in that regard and no evidence was presented at the hearing on the petition as to that matter. See 735 ILCS 5/2-1401(b) (West 2016) (stating that the petition must be supported by affidavit or other appropriate showing as to matters not of record). In addition, although Folder was only charged with a misdemeanor, it must be recognized that he greatly jeopardized the safety of the public by using the vehicle to obtain heroin, ingesting the heroin in the vehicle, and passing out while driving or in physical control of the vehicle. As that brief rendition of the facts indicates, the vehicle was an integral part of

the crime. While we are unable to say whether the criminal activity was extensive in terms of time and/or spatial use, we believe that when the factors are considered as a whole, it must be concluded that the punishment (forfeiture of the $15,000 vehicle) was not grossly disproportionate to the offense. See *One 2000 GMC*, 357 Ill. App. 3d at 876-79 (finding that the forfeiture of a $28,000 vehicle was not grossly disproportionate to the offense of driving while license suspended where the underlying suspension was for a statutory summary suspension). We, therefore, reject Sheland's excessive fine claim.

¶ 46                                    CONCLUSION

¶ 47          For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 48          Affirmed.